IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| S.R. SCHROEDER, INC. D/B/A ) <br> DIXON POLARIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN VINCENT TROTTER, AND ) <br> NATIONAL PUBLIC AUCTION ) <br> COMPANY, LLC, ) <br> ) <br> Defendant. ) | Case No. 3:11-cv-00244 <br> HAYNES/BRYANT <br><br> JURY TRIAL |

## INITIAL CASE MANAGEMENT ORDER

**I.     Jurisdiction and Venue**

This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 as the parties have complete diversity of citizenship and the amount in controversy is in excess of $75,000.00. Venue lies due to a forum selection clause in the purported contract between the parties.

**II. Parties' Theories of the Case**

  A.     <u>Plaintiff's Theory of the Case</u>

In October 2009 Plaintiff Dixon Polaris was solicited by phone by "AC," an agent of Vince Trotter and National Public Auction Company, LLC d/b/a "The Auction Connection" to sell some all-terrain vehicles (ATVs) at his auction in Murfreesboro, Tennessee. Plaintiff was interested in liquidating some inventory of ATVs. The ATVs were financed through various credit lines through manufacturers, and as such, Plaintiff told AC that the units all needed to bring a certain price at auction, otherwise they could not be paid off. Plaintiff sent a specific list

1

of inventory it wished to sell through The Auction Connection, including exact descriptions of 44 units and their manufacturer's invoice price. After Auction Connection's agent and Trotter reviewed the list, they expressly represented to Plaintiff that the auction would "put Dixon Polaris in the clear on most of the units." Based on that representation, Plaintiff signed a contract with National Public Auction, LLC to sell 44 units in a November 7, 2009 auction. The invoice prices on the ATVs totaled $318,650.

After the auction, Dixon Polaris was notified that the 44 ATVs sold for $181,550, which less than half the invoice prices on the units. Not one unit sold for invoice price.

In addition, as part of the bargain, Defendants agreed to collect the buyer information and provide it to Dixon Polaris so it would retain its dealer incentives. Despite repeated communications from Plaintiff to obtain this information, Defendants failed to respond and provide the information. This resulted in a $39,623.47 additional loss to Plaintiff. Also, Plaintiff suffered additional losses because of Defendants' refusal to send back the shipping crates.

Defendants are engaged in a racketeering scheme to defraud dealers all over the United States. This particular scheme involves the use of false prices that are sent to dealers, which have nothing to do with actual prices for motorsports sold at auction, but are simply fictitious numbers that are made up by Defendants' agents to fraudulently induce dealers to sell their merchandise with National Public Auction, and its auctioneer, Vince Trotter.

    B.    <u>Defendant Vince Trotter's and National Public Auction's Theory of the Case</u>

Towards the end of October, 2009 Defendant National Public Auction Company, LLC, entered into a legal and enforceable contract whereby said Defendant provided auction services to Plaintiff for sale of some of its unsold inventory. Said inventory was

an assortment of All-Terrain Vehicles (ATV's). Per the contract terms, the auction was to be "Absolute with Rebate Protection Plan" as stated in large, bold letters on the face of the contract. Absolute auctions, by their very definition, have no set minimum or reserve price. Further language in the contract shows expressly that no price was guaranteed and that Sellers are relying on their own judgment and not any statement by the auction company for pricing terms.

The rebate protection plan term of the auction required items to be sold to be identified and an invoice price disclosed prior to auction to compute the rebate to be granted the Seller, if applicable. Said information was provided to National Public Auction Company, LLC as a listing of the inventory to be sold. There is no contract term whatsoever dealing with shipping crates as mentioned in Plaintiff's complaint.

National Public Auction Company, LLC, sold the inventory provided by Plaintiff on or about the tentative auction date of November 7, 2009. Pursuant to the express terms of the contract, said inventory was sold at absolute auction. After the sale, Defendant National Public Auction Company, LLC sent Plaintiff a consignor statement showing each item sold, the sales price, the amount of the rebate due back to Plaintiff under the rebate protection plan, and all sales fees/costs. On the statement, Defendant noted a final amount due back to Plaintiff as a result of the sale. Within the time allotted by contract, Defendant National Public Auction Company, LLC remitted to Plaintiff the full amount due from the sale. Plaintiff negotiated the check and the contract was fully performed by both parties.

Defendants performed the contract exactly as the terms thereof required. The contract further provides that all legal fees and costs are to be paid to Defendants for

enforcing or defending its rights under contract. Defendants seek an award for all such damages.

**III.    Schedule of Pretrial Proceedings**

    A.    <u>Rule 26(a)(1) Disclosure</u>

The parties shall make their Rule 26(a)(1)(A) through (E) disclosures within (30) days from the date of the initial case management conference.

    B.    <u>Meeting of Counsel and Parties to Discuss Settlement Prospects</u>

Ninety (90) days from the date of the initial case management conference, counsel and clients are required to have a face-to-face meeting to discuss whether this case can be resolved without further discovery proceedings. If a party, other than a natural person, is involved in this litigation, a representative who has the authority to settle shall attend this meeting on behalf of that party. After the meeting is conducted, counsel shall prepare a report and file it with the Court reflecting that the parties met and that the parties made a good faith effort to evaluate the resolution of this case. This report should also include whether the parties believed that one of the Alternative Dispute Resolution ("ADR") procedures under the Local Rules would further assist the parties in resolving this matter. A representative from Dixon Polaris may attend the conference by telephone.

    C.    <u>Other Pretrial Discovery Matters</u>

As determined at the case management conference on **May 10, 2011**, this action is set for a jury trial on **June 12, 2012** at **9:00 a.m**. If this action is to be settled, the Law Clerk shall be notified by noon on **June 8, 2012**. If the settlement is

reached thereafter resulting in the non-utilization of jurors, the costs of summoning jurors may be taxed to the parties dependent upon the circumstances.

A pretrial conference shall be held **May 25, 2012** at **3:00 p.m.**. A proposed pretrial order shall be submitted at the pretrial conference.

All discovery shall be completed by the close of business on December 1, 2011. All written discovery shall be submitted in sufficient time so that the response shall be in hand by December 1, 2011. All discovery related statements shall be filed by the close of business on December 15, 2011. No motions related to discovery or for a protective order shall be filed until a discovery/protective order dispute conference has taken place and the attorneys of record shall attend and meet, face-to-face, in an effort to resolve the dispute and a jointly signed discovery/protective order dispute statement is submitted setting forth precisely the remaining issues in dispute and the reasons why those issues remain unresolved.

All dispositive motions[1] and *Daubert* motions shall be filed by the close of business on January 31, 2012, and any response thereto shall be filed by the close of business on February 28, 2012. Any reply shall be filed by the close of business on March 10, 2012.[2]

Any motion to amend the pleadings or join parties shall be filed in sufficient time to permit any discovery necessary because of the proposed amendment to be obtained within the time for discovery. No amendments will be allowed if to do so will result in a delay in the disposition of the action by requiring an extension of the discovery deadline.

There shall be no stay of discovery pending disposition of any motions.

Interrogatories pursuant to Rule 33, Federal Rules of Civil Procedure, shall be limited to sixty (60) such interrogatories. Subparts of a question shall be counted as additional questions for

---

[1] No memorandum in support of or in opposition to any motion shall exceed twenty (20) pages. No reply shall be filed to any response unless invited by the Court.

[2] Strict compliance is required to Rule 56.01, Local Rules of Court, relating to motions for summary judgment.

5

purposes of the overall number. In all other respects, Rule 33.01, Local Rules of Court, shall govern.

By the close of business on October 15, 2011, the plaintiff shall declare to the defendants (not to file with the Court) the identity of his expert witnesses and provide all the information specified in Rule 26(a)(2)(B).

By the close of business on November 15, 2011, the defendants shall declare to the plaintiff (not to file with the Court) the identity of their expert witnesses and provide all the information specified in Rule 26(a)(2)(B).

Any supplements to expert reports shall be filed by the close of business on December 1, 2011. There shall not be any rebuttal expert witnesses.

To reduce the needless expenditure of time and expense, there shall not be any discovery depositions taken of expert witnesses. A party may, however, serve contention interrogatories and requests for admissions upon another party's expert. If these discovery methods prove ineffective, a party may move to take the deposition of the expert. In a diversity action, a treating physician is considered a fact witness unless the physician expresses opinions beyond the physician's actual treatment of the party.

The expert witness report required by Rule 26(a)(2)(B), Federal Rules of Civil Procedure, is considered to be the expert's direct examination testimony at trial. If an expert expects to expound his or her testimony beyond the wording of the expert's report, the party calling the expert shall inform the opposing party with the specifics of that expounding testimony at least 15 days prior to the dispositive motion deadline.

These rules on experts are to ensure full compliance with Rule 26(a)(2); to enable the parties to evaluate any *Daubert* challenges prior to filing dispositive motions; to avoid conflicts with the experts' schedules; and to avoid the costs of expert depositions.

Local Rule 39(c)(6)(c) relating to expert witnesses shall apply in this action, and strict compliance is required.

It is so **ORDERED**.

*s/ John S. Bryant*
JOHN S. BRYANT
United States Magistrate Judge